P. M. Finance Corporation v. Commissioner.
P. M. Finance Corp. v. Commissioner
Docket Nos. 77725, 84356.
United States Tax Court
T.C. Memo 1961-108; 1961 Tax Ct. Memo LEXIS 242; 20 T.C.M. (CCH) 537; T.C.M. (RIA) 61108; April 14, 1961
*242 Robert Ash, Esq., 1921 Eye St., N.W., Washington, D.C., and Carl F. Bauersfeld, Esq., for the petitioner. David E. Crabtree, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income tax of petitioner for the taxable years ending May 31, 1955, May 31, 1956, and May 31, 1957, in the respective amounts of $3,849.27, $4,047.25 and $6,765.79. The sole issue for decision is whether amounts paid by petitioner to its sole stockholder and his wife during the taxable years constitute deductible interest on an indebtedness or nondeductible dividend distributions. Findings of Fact Most of the facts have been stipulated, and, as stipulated, are incorporated herein by reference. Petitioner is a Pennsylvania corporation, with its principal place of business in Philadelphia. It filed timely Federal income tax returns for the taxable years with the district director of internal revenue at Philadelphia. It keeps its books and records and reports its income on an accrual method of accounting and on a fiscal year basis ending May 31. Petitioner was incorporated on June 23, 1953. Its authorized capital stock is 1,000 *243 shares at a par value of $25 per share. On June 23, 1953, 400 shares of stock were issued to Philip Frank, and he paid $10,000 therefor on July 8, 1953. The officers of petitioner since its incorporation have been Philip Frank, president and treasurer, and his wife, Hilda Frank, secretary. At a meeting of the Board of Directors of the petitioner, held on July 1, 1953, the Board of Directors passed a resolution authorizing it to issue 5-year registered debenture bonds [1] in the amount of $300,000, as follows: WHEREAS, this board of directors deems it to the best interests of the corporation to borrow money from various persons, firms and corporations in order to carry on the corporate enterprise of this corporation; and WHEREAS, this board of directors deems it advisable to issue the debenture bonds of this corporation to such persons, firms and corporations as shall loan and advance money to this corporation; NOW, THEREFORE, BE IT RESOLVED, that this corporation hereby authorizes the issuance of the debenture bonds of this corporation payable within five years with interest thereon, payable annually at end of this fiscal year and then in semi-annual payments thereafter at *244 the rate of 7% per annum and with an authorized issue of $300,000.00. The form of the 5-year registered debenture bonds issued by petitioner is as follows: UNITED STATES OF AMERICA COMMONWEALTH OF PENNSYLVANIA
$1000.00 P.M. FINANCE CORP. #1 7%, 5 Year Registered Debenture Bond Authorized Issue - $300,000.00 P.M. Finance Corp., a corporation organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, with its main and principal office in Philadelphia, Pennsylvania, (hereinafter called "Company"), for value received hereby promises to pay… on presentation of this Registered Debenture Bond, the sum of $ on the… day of…, 19 . Company shall meanwhile and until the principal shall be paid in full, pay interest thereon at the rate of 7% per annum with the first interest payment to be made at the end of the current fiscal year and then in semi-annual payments thereafter. Company hereby charges with aforesaid payments *245 its undertaking and all its property whatsoever and wheresoever, both present and future. This Registered Debenture Bond is one of an issue of like tenor, numbered consecutively, executed or about to be executed by Company. IN WITNESS WHEREOF, Company has caused its corporate seal to be hereunto affixed, together with the signatures of its President and Secretary thereunto duly authorized on the… day of…, 19 . P.M. FINANCE CORP. By: … Pres. ATTEST: … Sec. Petitioner issued 7 per cent, 5-year registered debenture bonds as follows: Number
To Whom Issued
Date
Amount
1-15
Philip Frank
7- 8-53
$ 15,000.00
16-25
Philip Frank
8-17-53
10,000.00
26-40
Philip Frank
8-25-53
15,000.00
41-90
Philip Frank
9- 3-53
50,000.00
91-140
Hilda Frank
3-23-54
50,000.00
141-154
13 different persons
2-26-57
& 3-18-57
14,000.00
Total
$154,000.00
Petitioner is engaged in the business of lending money to finance tap rooms and cocktail lounges in Pennsylvania. Such loans are usually made to enable the borrower to purchase a going business, including the liquor license necessary for the operation of the tap room or cocktail lounge. *246 Sometimes the money is borrowed to purchase real property in which the business is operated, to renovate property, or to buy out the interest of a partner in such enterprise. In the operation of its business petitioner borrowed substantial sums of money from banks. As of May 31, 1955, its bank borrowings were in the total amount of $632,203.45 and its debenture bonds were outstanding in the amount of $140,000. As of May 31, 1956, its bank borrowings were in the total amount of $651,789.80 and debenture bonds were outstanding in the amount of $140,000. As of May 31, 1957, its bank borrowings were in the total amount of $552,304.60 and debenture bonds were outstanding in the amount of $154,000. In borrowing funds from banks, petitioner pledges as security the collateral it receives from its borrowers. The bank makes loans to the petitioner to the extent of 75 per cent of the notes it receives from borrowers. Petitioner receives payments from its borrowers weekly and makes payments to the banks weekly. Petitioner's debenture bonds were unsecured. Ownership of such bonds did not give the holders thereof any voting privileges. Petitioner has paid "interest" on its debenture bonds *247 when due. In order for petitioner to obtain bank loans with which to do business, it was necessary for Philip Frank and Hilda Frank to subordinate their rights as creditors under the debenture bonds to the rights of the bank. In October 1956, a revenue agent examining petitioner's returns for the fiscal years ending May 31, 1955, and May 31, 1956, advised petitioner's representative that he was going to recommend that deductions claimed for interest on the debenture bonds in those returns be disallowed on the ground that only the sole stockholder and his wife owned debentures. Thereafter, as already noted, debenture bonds in the aggregate amount of $14,000 were issued in 1957 to 13 other persons. These persons included Manuel Tracton, who was associated with Philip Frank in the operation of the finance business, Tracton's wife, his two sons and his brother, and Philip Frank's nephew, brother-in-law, sister-in-law, and daughter. In 1958, prior to the maturity of the debenture bonds owned by Philip Frank and his wife, they entered into agreements with petitioner extending the maturity dates on the bonds. No part of the principal of the debenture bonds owned by Philip Frank and *248 his wife has been paid. Petitioner has never declared a dividend. In each of the returns of petitioner for its fiscal years ending May 31, 1955, 1956 and 1957, it claimed as deductions the amounts of $6,300 and $3,500 paid to Philip Frank and Hilda Frank respectively as interest on debenture bonds. Respondent disallowed the claimed deductions on the ground that the payments constituted dividends and not interest. The debenture bonds issued by petitioner to Philip Frank and Hilda Frank in the amount of $140,000 in fact represented equity capital and not a bona fide indebtedness. Opinion RAUM, Judge: Whether the so-called debenture bonds here in controversy represented true indebtedness or merely equity capital depends upon all the facts. Of course, the form of the instruments is a factor to be considered but it is not conclusive. Cf. (C.A. 3), affirming . The issue is one that has often been before the courts, and the following cases, selected more or less at random, give some indication of the considerations taken into account in attempting to classtify a particular situation *249 as giving rise to debt or equity capital. , affirmed per curiam, (C.A. 2); , affirmed per curiam, (C.A. 9), certiorari denied, ; (C.A. 9), affirming a Memorandum Opinion of this Court; , affirmed, (C.A. 6); ; . A review of the evidence herein persuades us that the debenture bonds in controversy in fact represented equity capital and not a bona fide indebtedness. We have made a finding to that effect. It is altogether too plain on this record that the $10,000 paid-in capital was wholly inadequate for petitioner's operations, that it borrowed up to the hilt from banks, pledging all the collateral that was available to it, that it had no other assets of consequence, and that it required substantial amounts of additional money to enable it to function. Such additional funds do not appear to have been available through *250 ordinary channels, and we are fully convinced that in the circumstances of this case petitioner could not have borrowed the amounts in question in any bona fide loan transaction. The needed funds were made available to petitioner by its sole stockholder and his wife, who was also an officer of petitioner and obviously interested in its affairs. Plainly, this investment was one that was intended to ride with the ups and downs of the venture, and not a bona fide debt payable in any event. Indeed, although the instruments bore a maturity date they were not paid off, and payment thereon has in effect been extended indefinitely. To be sure, petitioner attempts to explain such extension on the ground that it was granted upon advice of counsel. However, there is no showing that petitioner had any assets of consequence at the time of maturity that could have been used to pay off the debenture bonds, and its list of assets on the balance sheets in evidence (as part of petitioner's returns) as of each of four dates one year apart indicate a pattern of operation whereby petitioner had only a comparatively small amount of assets which it could have used for that purpose. Certainly, the petitioner, *251 upon whom the burden rests, has not shown otherwise, apart from the general and unconvincing testimony of the sole stockholder that he "would see that the money was paid. I would get the money." Moreover, in the subordination agreements with the banks signed by the sole stockholder and his wife they agreed not to accept payment from petitioner of all or any part of the principal until after petitioner had paid in full, with interest, its indebtedness, "present and future", to the banks; and since the bank loans appear to be an indispensable and continuing feature of petitioner's operations, it seems clear that repayment of the so-called debenture bonds is highly unlikely except at some time in the indefinite future. We do not find it necessary to review all the evidence. We have taken the entire record into account, including the facts commented upon above, and have concluded that the debenture bonds did not constitute a true debt. Compare the following language in , affirmed, (C.A. 6), which to a considerable extent is pertinent here (): The most significant aspect of the *252 instant case, in our view, is the complete identity of interest between and among the three noteholders, coupled with their control of the corporation. The noteholders were husband, wife, and infant daugter, respectively. The husband held the majority stock in the corporation. It is, in our opinion, unreasonable to ascribe to the husband petitioner, F. E. Gooding, an intention at the time of the issuance of the notes ever to enforce payment of his notes, especially if to do so would either impair the credit rating of the corporation, cause it to borrow from other sources the funds necessary to meet the payments, or bring about its dissolution. Compare, on this aspect of the case, the reasoning in Mullin Building Corporation, supra, at pp. 355, 356. In addition, a realistic appraisal of the family situation can lead, in our view, only to the conclusion that with regard to the disposition or enforcement of their notes petitioner's wife and daughter never contemplated acting either independently of or contrary to the wishes of the petitioner. The fact that the majority of the notes here involved, all of which have long since matured, have not been paid lends corroboration to our finding *253 that at no time material to our consideration did the noteholders intend to enforce payment of their notes or assert the rights of bona fide creditors. If the state of mind of the noteholders was as above indicated, it is apparent that their position with respect to the amount represented by the principal of the notes was akin to that of the ordinary shareholder, who understands that his investment is subject to the risks of the venture and the prior claims of creditors. The incident here of the subordination of the Goodings' notes to the claims of others is too marked to permit us to find that a bona fide debtor-creditor relationship was established between the corporation and its controlling stockholders. Decision will be entered for the respondent. Footnotes
1. The use of the term "debenture bonds" herein is not intended as a finding that they represented true obligations of petitioner in contrast to capital investment; it is intended merely to identify the instruments involved.↩